Walter PEAVEY

v.

Richard TAYLOR, et al.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1993.
Decided Feb. 3, 1994.

Maurice A. Libner (orally), McTeague, Higbee, Libner, Macadam, Case & Watson, Topsham, for plaintiff.

Claire Gallagan Andrews (orally), Robinson, Kriger, McCallum, & Greene, P.A., Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Walter Peavey appeals from a summary judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) in favor of Richard Taylor individually and Taylor's Sporting Goods, China, Inc. (TSG), on Peavey's claim for personal injuries he received when he fell down a flight of stairs on the premises occupied by TSG. On appeal, Peavey contends that the court erred in ruling *as a matter of law* that (1) TSG was an employer enjoying the immunity afforded by the Workers' Compensation Act (Act), and (2) Taylor could not be held liable individually as the owner of the building in which the injury occurred. Because in the circumstance of this case, compensation was made to Peavey pursuant to a contract entered into by TSG with an employee management firm, TSG is entitled to the immunity afforded by the Act. Therefore, we affirm the judgment. A factual dispute remains, however, with respect to Taylor's liability as the landowner, and we therefore vacate the judgment in favor of Taylor and remand for further proceedings.

In April of 1990, TSG and Employee Staffing of America, Inc. (ESA), entered into a contract under which ESA assumed responsibility for all of TSG's employee management functions, including payroll and workers' compensation coverage. The contract provided that ESA would hire all of TSG's employees, including Richard Taylor and Peavey, and then lease them back to TSG. The contract further provided that the two companies would have joint supervision of the leased employees. On July 9, 1990, Peavey fell down a flight of stairs in a service building located on the premises occupied by TSG where he was employed as a "parts man." The fall resulted in an injury to Peavey's back that has prevented him from working.

Peavey filed a workers' compensation petition and began receiving payments approximately six weeks after the accident. These payments came from two sources. Initially, ESA's workers' compensation insurer, Travelers Insurance Company, paid Peavey's benefits until a dispute arose between ESA and Travelers;[1] thereafter, ESA paid Peavey directly.

The corporation, TSG, was formed prior to Peavey's injury. It is unclear from the record whether, when he formed TSG, Taylor transferred to it title to the service building where the accident occurred, or whether he continued to own it individually. While there is evidence indicating that Taylor has not collected rent for the building, nothing in the record indicates whether Taylor transferred title or dominion to TSG.

## I.

Maine's Workers' Compensation Act provides that "[a]n employer who has secured the payment of compensation in conformity with sections 21–A to 27 [of the Act] is exempt from civil actions ... involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries." 39 M.R.S.A. § 4 (Supp.1992).[2] Peavey contends that TSG is not immune from this civil suit because TSG has not "secured the payment of compensation" within the meaning of section 4 of the Act. We disagree.

TSG has secured payment of compensation through its contract with ESA. The insurance policy secured by ESA was issued by an insurer approved by the Workers' Compensation Commission in the form approved by the Commission, and was in effect on the date of Peavey's injury. There is no question that Peavey's injury is work-related, and that he has been receiving benefits under the Act. Although Peavey's injury occurred prior to the enactment of the statute governing employee leasing, 32 M.R.S.A. §§ 14051–14058 (Supp.1993),[3] the arrangement between TSG and ESA under which ESA is obligated to procure the insurance is commonly used and is not unlawful.[4] There is no allegation that the insurance policy was procured fraudulently. Although TSG's contract with ESA, standing alone, may not be suffi-

1. That dispute is the subject of a separate lawsuit, *Employee Staffing of America, Inc. v. Travelers Ins. Co.,* No. CV–92–471 (Me.Super.Ct., Ken. Cty.).

2. The Workers' Compensation Act has subsequently been revised. *See* 39–A M.R.S.A. §§ 101–909 (Supp.1993). Because this action was pending before the effective date of the revised Act, it is governed by the provisions of Title 39. *See* 1 M.R.S.A. § 302 (1989) ("Actions and proceedings pending at the time of passage, amendment or repeal of an Act or ordinance are not affected thereby.") *See also DeMello v. Department of Envt'l Protection,* 611 A.2d 985, 986 (Me.1992).

3. The statute governing employee leasing companies was enacted by P.L.1991, ch. 468, § 4.

4. The Statement of Fact accompanying the Employee Leasing Act shows that the legislature believed that the arrangement by TSG and ESA was authorized under the Workers' Compensation Act then in force:

This bill recognizes the dual employment relationship established by staff management arrangements and *confirms* that staff management companies [i.e., employee leasing companies] *may continue* current practices relative to maintenance of benefit plans ... and satisfying workers' compensation insurance coverage requirements. The shared employment situation for such employees is also recognized for purposes of preserving immunity for both "employers" under the workers' compensation laws.

L.D. 1008, Statement of Fact (115th Legis.1991) (emphasis added).

cient to constitute compliance with the Act, the combination of ESA's contractual obligation to obtain insurance and the fact that it has done so, is sufficient to meet the requirements of the Act. Accordingly, pursuant to 39 M.R.S.A. § 4, TSG is immune from suit.

## II.

■ Peavey states a separate claim against Taylor individually as the titleholder of the building in which the injury occurred for his alleged negligence in maintaining a safe work environment. The question raised by that claim is whether Taylor is a separate entity from TSG, the corporation, thus impacting his entitlement to immunity. We have said that when an exempt employer has a separate and distinct persona, with duties "'totally separate from and unrelated to those of the employment,'" that separate entity may be held liable for the employee's injuries. *Hatch v. Lido Co. of New England,* 609 A.2d 1155, 1156 (Me.1992) (quoting 2A A. Larson, *The Law of Workmens' Compensation* § 72.81 (1989)); *LaBelle v. Crepeau,* 593 A.2d 653, 655 (Me.1991). In the instant case, Taylor, as the titleholder of the building where Peavey was injured, could be liable as the landowner if it is determined that his duties are "totally separate" from TSG's duties as employer and that he breached a separate duty to maintain the building. It is not clear whether Taylor remains the owner of the service building where the injury occurred, or whether he completed some sort of "constructive" transfer of the property to TSG. Because these questions cannot be answered as a matter of law on the state of this record, we vacate the summary judgment as to Richard Taylor in his individual capacity.

The entry is:

Judgment in favor of Taylor's Sporting Goods, China, Inc. affirmed. Judgment in favor of Richard Taylor vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS and DANA, JJ., concurring.

RUDMAN, Justice, dissenting.

I agree with the Court that a summary judgment was improperly granted to Richard Taylor. In my view, however, an employer's immunity from civil liability is dependent on strict compliance with the provisions of the Workers' Compensation Act. Accordingly, I respectfully dissent from that part of the Court's opinion affirming the summary judgment in favor of TSG.

An employer under the Workers' Compensation Act surrenders its common law defenses to liability in exchange for immunity from the employee's common law rights of action. *Roberts v. American Chain & Cable Co.,* 259 A.2d 43, 46 (Me.1969). The rights of action accruing to an employee are exchanged for compensation for work-related injuries, regardless of fault. *Perry v. Hartford Accident and Indem. Co.,* 481 A.2d 133, 138–39 (Me.1984). This arrangement, and the rights and liabilities it creates, is purely statutory. *Roberts,* 259 A.2d at 49.

When interpreting a statute, the cardinal rule is to follow the plain language of the statute. *Perry,* 481 A.2d at 138. Although, in the course of our interpretations of the workers' compensation law that axiom has been relaxed somewhat to allow liberal interpretation *in favor of the employee* to accomplish the beneficial and humanitarian purposes of the Act, *Delano v. City of South Portland,* 405 A.2d 222, 224–25 (Me.1979), a liberal construction never justifies the creation of rights or liabilities not found in the Act. *Id.* at 225; *Rines v. Scott,* 432 A.2d 767, 769 (Me.1981).

The Workers' Compensation Act applicable to this action provided that "[a]n employer who has secured the payment of compensation *in conformity with sections 21–A to 27 [of the Act]* is exempt from civil actions . . . involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries." 39 M.R.S.A. § 4 (Supp. 1992). (emphasis added) The pertinent sections of the Act lay out stringent requirements to be fulfilled by an employer to comply with the Act and qualify for immunity. If the employer chose to purchase coverage

from an insurance company, that company must have been approved by the Superintendent of Insurance and must issue a policy in the form approved by the Superintendent. 39 M.R.S.A. § 23(1) (1989). If the employer wished to self-insure, it must provide the Superintendent with proof of solvency and ability to pay potential compensation payments. 39 M.R.S.A. § 23(2) (Supp.1992).

*These explicit requirements protect Maine's workers, and their plain language prohibits employers from self-designing programs that comply only approximately with the Act.* TSG has not secured the payment of compensation as required by the Act. *Id.* § 4. TSG's contract with ESA simply fails to meet the requirements of the Act in that the contract is not an insurance policy issued by a company approved by the Superintendent of Insurance in the form approved by the Superintendent. The fact that ESA had contracted with Travelers to provide workers' compensation coverage for all of its employees is not sufficient to afford TSG immunity. Nor does ESA's payments to Mr. Peavey to date fulfill the requirements of the Act.

I therefore would hold that TSG failed to comply with the Act, and was not an assenting employer exempt from this civil action involving a personal injury.