STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-97
*D HM-KEN- 3/* ~~~

W. TOM SAWYER, JR.,
ROBERT A. DAIGLE,
ALBION D. GOODWIN and
GARY E. SUKEFORTH,

       Plaintiffs

    v.

THE LEGISLATIVE COUNCIL,
BEVERLY C. DAGGETT,
PATRICK COLWELL, and
DAVID E. BOULTER,

       Defendants

**DECISION AND ORDER**

DC:..LD L. ~~~
U~ ~~~

*JUN 6 2005*

       This matter is before the court on cross-motions for summary judgment pursuant to M.R. Civ. P. 56. The present dispute involves a claim by the Plaintiffs, former Maine Legislators, that they are due compensation for service during the Second Special Session of the 121st Maine Legislature. Maine legislators are elected to serve for two-year terms, and the Legislature holds sessions during each of these years. The so-called First Regular Session begins on the first Wednesday of December following the November general election. *See* Me. Const. art. IV, pt. 3, § 1. The statutory deadline for the end of the First Regular Session is the third Wednesday in June. *See* 3 M.R.S.A. § 2 (2004). The so-called Second Regular Session begins on the first Wednesday after the first Tuesday in January of the following year. *See* Me. Const. art. IV, pt. 3, § 1. The statutory deadline for the end of the Second Regular Session is the third Wednesday in April. *See* 3 M.R.S.A. § 2 (2004). Although the Maine Constitution does not limit the type of business that may be conducted during the First Regular Session, the Constitution limits the business of the Second Regular Session to budgetary and other

specifically enumerated matters. *See* Me. Const. art. IV, pt. 3, § 1. Because legislators generally work five days a week when the legislature is in session, a First Regular Session involves approximately 120 days of work in Augusta and a Second Regular Session involves approximately 80 days of work in Augusta.

Article IV, Part 3, § 7 of the Maine Constitution states that legislators shall receive such compensation "as shall be established by law". Current law provides legislators with compensation of approximately $19,000.00 for the two-year term. *See* 3 M.R.S.A. § 2 (2004).

In addition to the First and Second Regular Sessions, the Legislature may call itself, or be called by the Governor, into "special session." At the time of the Second Special Session of the 121st Maine Legislature, 3 M.R.S.A. § 2 provided that "[i]n addition to the salary paid for the first and second regular sessions of the Legislature, when a special session is called, the members of the Senate and House of Representatives shall each be compensated $100 for every day's attendance."

The 121st Legislature's First Regular Session commenced on December 4, 2002, and adjourned on June 14, 2003. When legislators returned in January of 2004 for the Second Regular Session, it was generally understood by the Plaintiffs that the session would likely last until the middle or end of April due to the volume of work to be accomplished. One of the tasks facing legislators when they returned for the Second Regular Session was to enact a supplemental budget. The supplemental budget must take effect by the end of the fiscal year, which occurs annually on June 30.

The Maine Constitution mandates that legislation does not take effect until ninety days after the adjournment of the legislative session in which it was enacted. *See* Me. Const. art. IV, pt. 3, § 16. The State Constitution, however, also contains a limited exception that applies in the case of an emergency. Under this exception, if a bill

contains a preamble stating the facts constituting the emergency, and the bill passes both houses by a 2/3 majority, the bill may take effect immediately upon signing by the Governor. *See Id.* Hence, in years past, the Legislature typically ensured that the budget took effect before the end of the fiscal year by passing budgets as emergency measures by a 2/3 majority.

During the 121st Legislature's Second Regular Session, however, efforts to pass the supplemental budget by a 2/3 majority were unsuccessful, and instead, the budget received the approval of only a simple majority of the members. Therefore, to ensure that the supplemental budget took effect by June 30, a majority of the Legislature voted to adjourn the Second Regular Session on January 30, thereby beginning the running of the 90-day period. This action, however, meant that the Legislature had adjourned without addressing numerous other pending matters. Thus, before adjourning on January 30, and apparently realizing that a special session would be required to complete this unfinished business, the Legislature twice attempted to block the statutory $100 per day payments that might otherwise be forthcoming. First, an Emergency Resolve was introduced and failed. The second measure introduced, however, a Joint Order, managed to pass both houses by a simple majority. The Joint Order did not purport to change the existing law, but rather, it stated that current law already provided for legislative compensation through April 21, 2004, the statutory adjournment date for the Second Regular Session.

Subsequent to the passage of the Joint Order, several senators asked the Attorney General to give an opinion as to the Order's effectiveness. The Attorney General concluded that the Joint Order was likely not effective to eliminate the special session payments because the State Constitution requires legislative pay to be "established by law". This requires that an act or resolve pass both houses of the Legislature and then

be signed by the Governor. The Attorney General did, however, suggest that the special session payments could possibly be eliminated by amending the legislative pay statute and by making the amendment retroactive to January 30, 2004.

Thus, during the Second Special Session, a bill was introduced to eliminate special session payments retroactive to January 30, 2004, just as the Attorney General suggested. Both the House and Senate passed the bill, which was signed by the Governor on May 6, 2004. The Act amended 3 M.R.S.A. § 2 to specify that special session payments would not be made for any special session called during the time period specified for regular sessions. *See* P.L. 2003, ch. 691, §§ 1, 2. Because the bill was not an emergency measure, it did not take effect until July 30, 2004, ninety days after the Second Special Session adjourned.

Each of the Plaintiffs to the present action, W. Tom Sawyer, Jr., Robert A. Daigle, Albion D. Goodwin, and Gary E. Sukeforth (hereinafter "the Plaintiffs" or "the Legislators") served as members of the Maine Legislature during the Second Special Session of the 121st Maine Legislature, which began on February 3, 2004, and ended on April 30, 2004. On or before May 3, 2004, each of these individuals requested payment from Defendant David Boulter, Executive Director of the Legislative Council, of $100 for each day of their attendance at the Second Special Session. Each of these requests was denied[1].

The Plaintiffs filed their complaint on May 12, 2004, filed their amended complaint[2] on May 13, 2004, and filed their motion for summary judgment on August 24, 2004. All submissions relevant to Plaintiffs' motion were timely filed. The

---

[1] All legislators apparently were paid $100 per day for days in attendance at the Second Special Session after April 21, 2004 pursuant to the amended version of 3 M.R.S.A. § 2.

[2] The amended complaint is in three counts. Count I seeks a declaratory judgment; count II asserts a claim of breach of contract; count III asserts a claim for unpaid wages pursuant to 26 M.R.S.A. § 626-A.

Defendants filed their motion for summary judgment on September 28, 2004. All Submissions relevant to Defendants' motion were also timely filed.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

## 1. Is This a Non-Justiciable Dispute?

In their brief, the Defendants first assert that the present action, which is essentially a dispute within the Legislature regarding the budget process, presents a

nonjusticiable political question. The Defendants note that the Plaintiffs filed this lawsuit in an effort to shape the budgetary process in the future because they were unhappy that the majority did not make more concessions to achieve a 2/3 majority on the supplemental budget. In the Defendants' view, this is a purely political question within a coordinate branch of state government, and the Court should permit the Legislature to deal with the issue on its own.

In support of their position, the Defendants first set forth the most commonly cited statement of the political question doctrine:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). The Defendants contend that at least three of these factors are present here. First, they assert that Maine's Constitution clearly commits to the Legislature the power to set its own compensation by statute. Since a majority in the Legislature has already decided that its members should not receive extra pay for the Second Special Session, they believe that the Court should acquiesce in this decision. Second, the Defendants contend that if the Court attempted to adjudicate this dispute, it would show a lack of respect for the Legislature. This argument rests on the fact that Plaintiffs have admitted filing this suit merely to affect the legislative budget process, and it should remain up to the Legislature how that process plays out. Finally, the Defendants suggest that there is an unusual need here for adhering to the Legislature's decision regarding special session payments. In particular, they assert that

the Legislature eliminated the payments in recognition of the fact that its members were performing the work of a regular session in the context of a special session, and it would be inappropriate for taxpayers to, in essence, pay twice.

In response, the Plaintiffs point out that although this action arises out of a budget dispute in the Legislature, they do not ask the Court to interfere with that process or to take action that would limit the Legislature's ability to act in the future. Instead, while recognizing that the parties and circumstances of this action are unusual, they assert that the requests for relief and need for Court interpretation of Constitutional and statutory provisions are not.

The Plaintiffs also believe that none of the factors espoused in *Baker* are present in this case. The Legislators first point out that the issue in *Baker* was the constitutionality of legislative districts created by a state legislature. Although there was no dispute that the legislature had the power to apportion legislative districts, the Supreme Court held that despite that grant of power, a Constitutional challenge to the districts created by the use of that power was not a political question. Hence, the Plaintiffs assert that more than a simple grant of power to a political branch is needed to create a political question – that branch must also be given the power to resolve disputes concerning the use of that power. As an example, the Legislators note that the Maine Constitution gives the Legislature the exclusive power to "be the judge of the elections and qualifications of its own members". Me. Const. art. IV, pt. 3, § 3. Conversely, to show the weakness of the Defendants' argument, the Plaintiffs note that the Legislature is also given the power of taxation, yet the Courts have never concluded that the Legislature's use of that power is immune from a Constitutional challenge in court.

In response to the Defendants' argument that this Court would be expressing a lack of respect for the Legislature by becoming involved, the Plaintiffs note that this same argument was unsuccessfully raised in *Baker*. Instead, the Supreme Court determined that when a court's decision would require no more than an interpretation of the law, it does not involve a lack of respect due a coordinate branch of government. The Legislators assert that in this case all that is required is an interpretation of the law.

Lastly, in response to the suggestion that the Legislature was attempting to lessen the impact of special sessions payments on the State Treasury, the Plaintiffs simply respond that this is no defense for violating the Constitution.

In light of the foregoing, it appears that this Court may properly hear and decide the present case. It is true that the facts underlying this dispute implicate political processes. However, this on its own is insufficient to make the issues presented nonjusticiable. Indeed, "the mere fact that the suit seeks protection of a political right does not mean it presents a political question." *Baker*, 369 U.S. at 209. In this case, the Plaintiffs seek an interpretation of Maine statutes and the State Constitution, functions that are well within the authority of the Court. Moreover, the Defendants have failed to persuade the Court that the factors espoused in Baker show this to be a nonjusticiable dispute. Therefore, the Court will proceed to consider the other substantive arguments raised in the briefs.

## 2. Can a Joint Order Lawfully Affect a Change in Legislative Pay?

The Plaintiffs argue that the Joint Order of January 30, 2004, was ineffective to deny legislators $100 for each day's attendance at the Second Special Session prior to April 22, 2004. In support of their position, the Plaintiffs cite two Law Court opinions from the 1950's. In *Opinion of the Justices*, 96 A.2d 749 (Me. 1953), the House asked the Justices if the Legislature could authorize reimbursement for expenses to legislators by

joint order. In its opinion, the Law Court distinguished between expenses necessary for operation of the Legislature, which can be provided for by an order, and the payment of personal expenses of legislators, which can only be provided for by a law passed by both Houses of the Legislature and signed by the Governor. *See Id*. at 750. The Plaintiffs also find pertinent the conclusion that legislative compensation can only be *effected* by act or resolve, and point out that the Law Court did not limit such formalities merely to *increases* in compensation. *See Id*. at 751. In *Opinion of the Justices*, 140 A.2d 762 (Me. 1957), the House asked the Law Court if the Legislature could increase the amount paid to legislators for travel by joint order. In finding that such an increase could only be accomplished by law, the Justices explained that "[a] Legislature by order, as here, if such a view prevailed, could destroy completely the mandate of the statute." *Id*. at 764. Based on these two opinions, the Plaintiffs assert that any terms of the Order that made changes to legislative compensation needed to have been enacted by statute to comply with the State Constitution.

Based on this framework, the Legislators contend that the next question for consideration is whether the compensation provisions of the Order were consistent with the statute that was in effect at the time of its passage, or if it made changes that require a statutory amendment. The Plaintiffs note that 3 M.R.S.A. § 2 sets legislative pay at $7,725.00 for the second year of the two-year term, and also mandates that the second regular session of the Legislature adjourn no later than the 3rd Wednesday in April. Moreover, the version of 3 M.R.S.A. § 2 in effect at the time the Order was passed provided that "in addition to the salary paid for the first and 2nd regular sessions of the Legislature, when a special session is called the members of the Senate and House of Representatives shall each be compensated $100 for every day's attendance." The Plaintiffs point out that the primary rule of statutory construction requires that courts

give effect to the plain meaning of a statute. *See Harding v. Wal-Mart Stores, Inc.*, 2001 ME 13, ¶ 9, 765 A.2d 73, 75. In their view, the "in addition" phrase quoted above requires that the $100 per diem payment be made during any special session regardless of when it occurs. The Plaintiffs also note that payment to the legislators for service during the second year of a term in office is in no way tied to attendance at or the length of the second regular session. Therefore, the Plaintiffs believe that paying legislators for attendance at a special session held prior to the statutory adjournment date would not amount to paying legislators twice because statutory compensation paid for the second year of a term is not tied to the performance of particular services. Moreover, they believe the system implicitly recognizes that the work of the Legislature continues when the Legislature is not in session.

In opposition, the Defendants concede that the Court should first look to the plain meaning of statutory language. However, they assert that the prior version of 3 M.R.S.A. § 2 was ambiguous with respect to whether legislators are entitled to $100 per diem under the present circumstances, and thus, legislative intent should be examined. *See, e.g., DiVeto v. Kjellgren*, 2004 ME 133, ¶ 18, 861 A.2d 618, 623. (If statutory language is ambiguous, court will look to other evidence of legislative intent). Furthermore, the Defendants note that the Law Court has even gone as far as to ignore unambiguous statutory language where strict adherence would frustrate the obvious intent of the Legislature. *See, e.g., Town of Union v. Strong*, 681 A.2d 14, 18 (Me. 1996) (Strict construction cannot defeat clear intent of statute or construe statute in an unreasonable manner); *State v. Niles*, 585 A.2d 181, 182 (Me. 1990) (Court can even ignore literal meaning of phrases if that meaning thwarts clear legislative objectives).

As proof of the Legislature's true intent, the Defendants assert that in passing the Joint Order, a majority in both chambers apparently believed that under existing law

they were not entitled to special session payments for special sessions held during the time reserved for regular sessions. Additionally, the Defendants note that the bill passed during the Second Special Session purporting to retroactively eliminate special session payments was entitled "An Act to *Clarify* Legislative Pay." L.D. 1961 (121st Legis. 2004) (emphasis in Defendants' brief). The Defendants contend that this also indicates that a majority of the Legislature believed that they were not entitled to special session payments, and only sought to clarify what was not then specifically stated in 3 M.R.S.A. § 2.

The Defendants also believe the history of the legislative pay statutes supports their position. The Defendants note that legislators originally received two dollars for each day of attendance at a session, regardless of whether it was a regular session or an "extra" session. Resolves 1820, ch. 23. Hence, legislative pay was historically based on the number of days of attendance at a session. The Defendants go on to surmise that when a fixed salary was eventually implemented, this was done in recognition of the fact that the length of the regular sessions is predictable. On the other hand, the Defendants speculate that because the length of special sessions is unpredictable, this is probably why legislators still receive per diem compensation for their attendance. Thus, the Defendants assert that the true legislative intent underlying 3 M.R.S.A. § 2 was to base legislative pay on the amount of work and approximate number of days that the Legislature is in session, irrespective of whether those days were spent in regular or special session.

In response, the Plaintiffs contend that if the statute could easily be interpreted to deny per diem pay under the present circumstances as the Defendants suggest, then it would have been unnecessary to introduce measures designed to ensure this result. Additionally, the Plaintiffs note that during a past session of the Legislature, a similar

emergency resolve was introduced to deny per diem pay for attendance at a special session held before the statutory deadline. These actions, in the Plaintiffs view, show that the Legislature actually believed that the pre-amendment version of 3 M.R.S.A. § 2 required the per diem payments regardless of when a special session was held.[3]

The parties have correctly noted the general rule regarding statutory interpretation, as well as the main exceptions thereto. Based on a plain reading of 3 M.R.S.A. § 2 as it existed at the time of the Second Special Session, the only reasonable interpretation of the statutory language requires the per diem payments to be made as argued by the Plaintiffs. Specifically, the "in addition" phrase that appears at the beginning of the sixth paragraph, and the absence of any language tying compensation for regular sessions to the length of those sessions, indicates that special session payments must be made without regard to why or when the regular session adjourned. Although the Defendants raise an interesting issue by delving into the history of legislative pay statutes, they have failed to persuade the Court that the Legislature's true intent was to base compensation on the length of the session. In fact, the Defendants' argument on this point is counterintuitive. If the Legislature meant for legislative pay to mirror days spent in session, the original statute assured this result. Thus, by amending the statute to provide a fixed salary it seems that there existed some alternative reasoning, such as the recognition that legislative work continues even when the Legislature is not in session.

Based on the foregoing, the version of 3 M.R.S.A. § 2 in effect during the Second Special Session did not prohibit special session payments for special sessions held during the time specified for a regular session. Moreover, the Court agrees with the

---

[3] One must assume that the requirement that compensation be set by law is somewhat influenced by a public desire that a legislature not arbitrarily and capriciously play with legislative salaries and expenses.

Plaintiffs' interpretation of the two Opinions of the Justices cited above. Indeed, it appears that the Law Court sought to foreclose the possibility of altering the legislative pay statue by a unilateral act of the Legislature, regardless of whether the result would be to increase or decrease compensation. *See Opinion of the Justices*, 152 Me. at 305. Thus, the Joint Order of January 30, 2004, which purported to eliminate these payments, was an unlawful attempt to alter legislative pay. Therefore, as a matter of law, this Court finds that the Joint Order is of no legal effect. Furthermore, this Court declares that under the version of 3 M.R.S.A. § 2 referenced above, the Plaintiffs are entitled to payment of $100 for each day in attendance at the Second Special Session between February 3, 2004 and April 30, 2004. The Joint Order of January 30, 2004, is ineffective to deny the legislators $100 for each day's attendance at the Second Special Session prior to April 22, 2004.

3.     **Does 3 M.R.S.A. § 2 As Amended Apply in this Case?**

Next, this Court must determine whether the amended version of 3 M.R.S.A. § 2 applies retroactively to prohibit special session payments for attendance at the Second Special Session between February 3rd and April 21st of 2004. As noted above, the amendment was signed by the Governor on May 6, 2004, the Plaintiffs filed their complaint on May 12, 2004, and the amendment became effective on July 30, 2004. The Plaintiffs argue that under these circumstances, their case constitutes a "pending proceeding" entitled to the protection of 1 M.R.S.A. § 302. 1 M.R.S.A. § 302 provides, in part, "[t]he repeal or amendment of an Act or ordinance does not affect…any action or proceeding pending at the time of the repeal or amendment…. Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."

The Plaintiffs argue that the Law Court has made inconsistent rulings as to whether section 302 applies to actions that are filed after a statutory change is enacted but before the change in the law becomes effective. However, the Plaintiffs assert that most of the authority supports the position that section 302 applies when, as here, a complaint is filed after a statutory change is enacted, but before the change has gone into effect. Specifically, they recognize that in *Heber v. Lucerne-in-Maine Village Corporation*, 2000 ME 137, 755 A.2d 1064, and *Fishermens Landing, Inc. v. Town of Bar Harbor*, 522 A.2d 1312 (Me. 1987), the Law Court reached a conclusion that directly contradicts their position on this point, but in *Morrissette v. Kimberly-Clark Corp.*, 2003 ME 138, 837 A.2d 123, *Bernier v. Data General Corp.*, 2002 ME 2, 787 A.2d 144, *State v. Haskell*, 2001 ME 154, 784 A.2d 4, *DeMerchant v. DeMerchant*, 2001 ME 66, 780 A.2d 1134, *Loud v. Kezar Falls Woolen Co.*, 1999 ME 118, 735 A.2d 965, *Weeks v. Allen & Coles Moving Systems*, 1997 ME 205, 704 A.2d 320, *Kinney v. Great Northern Paper, Inc.*, 679 A.2d 517 (Me. 1996), *Peavey v. Taylor*, 637 A.2d 449 (Me. 1994), *State v. Dyer*, 615 A.2d 235 (Me. 1992), *DeMello v. Department of Environmental Protection*, 611 A.2d 985 (Me. 1992), *Moore v. Moore*, 586 A.2d 1235 (Me. 1991), and *Schlear v. Fiber Materials, Inc.*, 574 A.2d 876 (Me. 1990), the Law Court reached the opposite result. Furthermore, the Legislators contend that their position is the most practical one because neither the Maine Revised Statutes nor the Laws of Maine indicate when a statute was enacted – both refer only to the effective date of the statute. Hence, the contrary view would require courts to look to the legislative records for laws passed but not yet on the books whenever making a ruling.

In response, although the Defendants concede that the Law Court has in certain cases referred to the effective date of statutes when applying section 302, they believe that *Heber* and *Fishermens Landing* provide a more accurate statement of the law.

Particularly, the Defendants note that the Law Court specifically discussed and analyzed whether the effective date or the enactment date controls in *Heber* and *Fishermens Landing*, whereas in the cases relied upon the Plaintiffs, the Law Court provided no such analysis. Furthermore, the Defendants believe that their proffered interpretation is more consistent with the language of section 302, which refers to proceedings pending at the time of "passage." The Defendants point out that the Law Court in *Fishermens Landing* equated that term with "enactment," as opposed to "effectiveness." *See Fishermens Landing*, 522 A.2d 1312-13 (citing BLACK'S LAW DICTIONARY 1012 (5th ed. 1979).[4]

After due consideration, it is apparent that the Defendants have presented the more persuasive argument regarding the operative date for the applicability of 1 M.R.S.A. § 302. While the inconsistencies noted by the parties are indeed puzzling, the *Heber* and *Fishermens Landing* decisions provide the most direct analysis of the question presented, and are therefore entitled to the greatest deference. Thus, this Court finds as a matter of law that a "pending proceeding" for the purposes of section 302 is one that commenced prior to the date of *enactment* of the act or ordinance in question. As the parties dispute neither the date that the amendment to 3 M.R.S.A. § 2 was enacted, nor the date that the Plaintiffs filed their complaint, this Court further concludes that 1 M.R.S.A. § 302 does not bar application of the amended statute to the Plaintiffs' claims.

## 4. Do the Plaintiffs Have a Vested Right to Receive Special Session Payments?

Irrespective of whether a statute purports to operate retroactively, the Plaintiffs assert that when a complaint is filed after a change in the law, but states a cause of

---

[4] The current version of Black's Law Dictionary (7th ed.) defines "passage, 1. The passing of a legislative measure into law." That same edition defines "enact, 1. To make it a law by authoritative act; to pass." This supports the favorable comparison of passage as enactment.

action that accrued before the change, courts look to common law principles to determine whether the new or old law applies. *See Heber*, 2000 ME 137, ¶ 10, 755 A.2d at 1066. Moreover, the Plaintiffs note that at common law, an individual has a vested right in an accrued cause of action, and a statutory enactment cannot act to defeat that cause of action retroactively. *See Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 815-16 (Me. 1980). Since, in their view, they had a cause of action for unpaid compensation before the amendment to 3 M.R.S.A. § 2 was adopted, applying the amended statute would impermissibly change the nature of a vested right accrued pursuant to the prior version of the statute.

The Plaintiffs also discuss the applicability of the Law Court's holding in *Norton v. Blouin, Inc.*, 511 A.2d 1056 (Me. 1986), to the facts of this case. In *Norton*, the Law Court stated that "[i]f the Legislature intends a retroactive application, the statute must be so applied unless the Legislature is prohibited from regulating conduct in the intended manner, and such a limitation upon the Legislature's power can only arise from the United States Constitution or the Maine Constitution." *Id.* at 1060, n.5. Although this statement of the law directly conflicts with the common law approach espoused in *Heber*, the Plaintiffs emphasize that, in light of *Heber*, the Law Court has obviously not abandoned extra-constitutional methods of limiting legislative power to retroactively affect vested rights. However, even under the narrower view expressed in *Norton*, the Plaintiffs believe that the amendment under consideration should not be applied. Essentially, the Legislators suggest that their right to payment arises from Article IV, Part Third, § 7 of the Maine Constitution, and hence, even under *Norton*, applying the amended version of 3 M.R.S.A. § 2 would be inappropriate.

As for the specific source of their cause of action, the Legislators point to 26 M.R.S.A. § 626-A. According to the Plaintiffs, under the provisions of section 626-A,

their cause of action accrued, and thus became vested, eight days after they made a demand for unpaid wages, and the wages did in fact remain unpaid. Also, implicit in this argument is an assertion that this eight-day period lapsed prior to the change in the law.

In opposition, the Defendants first argue that the amendment to 3 M.R.S.A. § 2 can be applied retroactively because it can survive the three-part test governing challenges to retroactive economic legislation under the due process clause of the Maine Constitution. *See State v. L.V.I. Group*, 1997 ME 25, ¶ 9, 690 A.2d 960, 964. To satisfy this test, it must be shown that "1. The object of the exercise must be to provide for the public welfare. 2. The Legislative means employed must be appropriate to the achievement of the ends sought. 3. The manner of exercising the power must not be unduly arbitrary or capricious." *Id.* Accordingly, the Defendants note that the object of the legislation was to protect already strained state coffers, eliminating special session payments was an appropriate way to achieve this goal, and all legislators were equally affected by this action. Hence, in their view, the three-part test espoused in *L.V.I. Group* was easily satisfied.

Secondly, the Defendants argue that because this legislation was actually a clarification of existing law, and did not affect any real change in the law, the amendment may be applied retroactively. In support of this proposition, the Defendants cite to the "curative" exception to the general rule against retroactive application of statutes, whereby an amendment to a statute may apply retroactively where it is designed merely to carry out or explain the intent of the original legislation. *See* Norman J. Singer, *Sutherland on Statutory Construction* § 41:11, at 469-70 (6th ed. 2001).

In addition, the Defendants contend that the statute may be applied retroactively because the Legislators had no reasonable expectation of receiving special session payments under the present circumstances.

Lastly, the Defendants assert that because pre-amendment 3 M.R.S.A. § 2 is susceptible to different interpretations with respect to the per diem payments, the Plaintiffs could not reasonably have expected that such payments would be made. Therefore, the Legislators never acquired a vested right in the special session payments.

In response to these arguments, the Plaintiffs characterized their claim as arising under the Maine Constitution. This obviously depends upon a proper interpretation of the language, "...shall receive such compensation, as shall be established by law;". Further language requires that the expenses of members of the House of Representatives shall be paid by the State out of the public treasury but *quaere*, does the Constitution require that legislators receive a salary at all if it was established by law to set the legislative compensation at zero? Notwithstanding that uncertainty, it is clear that the true source of the Plaintiffs' alleged right to compensation is the statute itself. Moreover, even if the United States Constitution would permit the retrospective application of the amended statute to the Plaintiffs' claims, the Law Court has apparently adhered to a different approach based on common law principles, as illustrated in *Heber*. Also, as discussed above, the purported amendment was not simply an attempt to clarify the law as the Defendants suggest, but rather, it was in fact a substantive change. Thus, the remaining arguments presented by the Defendants are without merit.

Based on the foregoing, and particularly in light of the *Heber* decision, so long as the Plaintiffs' cause of action did in fact accrue prior to the change in the law, they have a vested right in that cause of action. Furthermore, the Legislature's attempt to

retroactively defeat their cause of action is ineffective. *See Heber*, 2000 ME 137, ¶ 10, 755 A.2d at 1066. The Law Court considers the date upon which this law "changes" in this context to be the date that the law becomes effective, not the enactment date. *See Heber*, 2000 ME 137, ¶ 12, n.5, 755 A.2d at 1067.

**5.      Do the Plaintiffs Have a Cause of Action Pursuant to 26 M.R.S.A. § 626-A?**

The Plaintiffs claim that because the Defendants failed to make timely payment of wages (the per diem payments) as required by 26 M.R.S.A. § 621-A, they, as employees, are entitled to the remedies available under 26 M.R.S.A. § 626-A. At the threshold, the Plaintiffs recognize that there is a question as to whether these sections apply to them, as duly elected and sworn members of the Maine Legislature. The Plaintiffs note that there is no statutory definition of "employer" or "employee" which is made applicable to these sections.[5] Thus, the Legislators suggest that such undefined terms in a statute should be given their common and generally accepted meaning, unless the context of the statute clearly indicates otherwise. *See State v. York*, 1997 ME 209, ¶ 9, 704 A.2d 324, 326. Accordingly, they offer the definition of employee found in BLACK'S LAW DICTIONARY, 5th Edition, which is, *inter alia*, "a person working for salary or wages." BLACK'S LAW DICTIONARY 471 (5th ed. 1979).

In this case, the Plaintiffs believe that the lack of any definition of the term employee in sections 621-A or 626-A shows an intent to include a broad scope of individuals within its meaning. The Legislators also note that several other Maine labor statues specifically exempt elected officials from their provisions, including sections 663(10), 962(6)(A), 979-A(4-A)(A), and 10143(11)(f)(21)(i)(i) of title 26. However, the

---

[5] *But see* 26 M.R.S.A. § 591(2) contained in the same chapter, Employment Practices, as section 626-A in defining "employer" as "an individual, partnership, association, corporation, legal representative, trustee, receiver, trustee in bankruptcy and any common carrier by rail, motor, water, air or express company doing business in or operating within the state."

Plaintiffs also point out that elected officials are not exempted from all Maine labor laws. *See* 39-A M.R.S.A. § 102(11) (2003). In sum, the Plaintiffs assert that the Legislature has exempted elected officials from Maine's labor laws where it has deemed appropriate, and the failure to do so in this case should be taken to indicate an intent to include elected officials within the scope of the statutes under consideration.

In response, the Defendants first present a defense based on the doctrine of sovereign immunity. The Defendants note that "[t]he immunity of the sovereign from suit is one of the highest attributes inherent in the nature of sovereignty". *Drake v. Smith*, 390 A.2d 541, 543 (1978). Moreover, "a claim against the State will be dismissed 'unless the State, acting through the Legislature, has given its consent that the present action be brought against it.'" *Waterville Industries v. Finance Authority of Maine*, 2000 ME 138, ¶ 21, 758 A.2d 986, 992 (quoting *Drake*, 390 A.2d at 543-44). The Defendants assert that the Legislature can consent by way of an enactment making the State amenable to a particular class of lawsuits, or the legislature can consent to a specific lawsuit. *See Drake*, 390 A.2d at 544-45. But, without legislative consent, the State may not be sued.

In addition, the Defendants note "the general rule in Maine that the State is not bound by a statute unless expressly named therein." *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994) (quoting *State v. Crommett*, 151 Me. 188, 193, 116 A.2d 614 (1955)). Hence, in the absence of an explicit waiver by the Legislature, and because the State is not named in the unpaid wage statute, the Defendants suggest that the State is not subject to claims under 26 M.R.S.A. § 626-A.

Based on the legal propositions espoused in *Drake* and the other cases cited above, it appears that the Plaintiffs' statutory claims for unpaid wages are indeed barred by the doctrine of sovereign immunity. As was the case in *Drake*, the present

Defendants are officials or agencies of the State of Maine. Moreover, the alleged liability to pay money to the Plaintiffs arises by virtue of the Defendants' official activities. *See Drake*, 390 A.2d at 543. Therefore, "[t]he reach of the present action is against the State of Maine as the party to be adjudicated liable to pay the money claimed by the plaintiff[s]." *Id.* Furthermore, "[t]he State of Maine is a necessary party to the action, and sovereign immunity has applicability to require dismissal of the action unless the State, acting through the Legislature, has given its consent that the present action be brought against it." *Id.* at 543-44. It is apparent that the Legislature has not consented to be subject to the remedies provided under 26 M.R.S.A. § 626-A. Further, this court is not satisfied that the State of Maine would be considered an employer as defined in 26 M.R.S.A. § 591.

Less clear, however, and seemingly to the contrary, is whether the State has consented to be liable and subject to a cause of action to members of the Legislature as a result of 3 M.R.S.A. § 2.

6. **Did the Defendants Breach a Unilateral Contract?**

The Plaintiffs claim that they have a contractual right to the statutory per diem payments required by the pre-amendment version of 3 M.R.S.A. § 2. They concede that certain Law Court holdings establish that a statute will not be presumed to create contractual rights binding future legislatures unless the intent to do so is clearly stated. *See Spiller, et al. v. State of Maine, et al.,* 627 A.2d 513, 515 (Me. 1993) (citations omitted). However, they also assert that the case law distinguishes between contracts for future compensation and for compensation already earned under a contract. *See Bowman v.*

*Maine State Employees Appeals Board*, 408 A.2d 688, 692 (Me. 1979)[6]. Based on this distinction, the Legislators believe that they are entitled to the disputed per diem payments since, in their view, their attendance at the Second Special Session created a unilateral contract.

In response, the Defendants assert that the Plaintiffs would be unjustly enriched if they received the disputed payments because it would essentially amount to paying the Legislators twice for the same work. Moreover, the Defendants contend that the Plaintiffs have no contractual rights in any event.

In the final analysis, the Maine Constitution asserts mandatory language that the Senators and Representatives *shall* receive such compensation, as shall be established by law. (Emphasis supplied). The law, as it existed January 30, 2004, established that each member of a Senate and House of Representatives, "Beginning with the first Wednesday of December 2000 and thereafter, is entitled to ..." That language clearly indicates an intention on the part of the Legislature to establish a salary to be honored until changed. Furthermore, the word "entitled" establishes intent to vest in the members of the Senate and House of Representatives compensation. This vested compensation as of January 30, 2004, created a unilateral contract subject to change and repeal by change in the law. Closely following the language of the common law as presented by *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137; 755 A.2d 1064, when faced with questions regarding the applicability of a statutory change, the Court must first determine what body of law applies to the determination of the controlling statute. If the complaint is filed before the enactment of the statutory change, the general savings provision found in 1 M.R.S.A. § 302 applies. If the complaint is filed after the

---

[6] In the Plaintiffs' brief, they cite to page 691 of the Bowman opinion. It is assumed that they meant to reference page 692. This language must be considered distinguishable since it is cited in a context of a contract between a teacher and a governmental employer. Citing *Sawin v. Town of Winslow*, 253 A.2d 694, 700 (Me. 1969).

statutory change is enacted, section 302 by its own terms does not apply. Plaintiffs' complaint was filed May 12, 2004, six days after the enactment of the amended 3 M.R.S.A. § 2. Although the amendment was not effective until July 30, 2004, after plaintiffs filed their complaint, for purposes of section 302, the enactment date, rather than the effective date, controls. Because the repeal was enacted before the plaintiffs filed their complaint, this action was not "pending at the time of the repeal" and section 302 does not apply as the Court has recited above. The court states in *Heber*:

> The fact that section 302 does not apply to 'save' the complaint does not, however, end the analysis. When a complaint is filed after a change in the law, but states a cause of action that accrued before the change, we look to common law principles to determine whether the new or old law applies. At common law, an individual has a vested right in an accrued cause of action, and a subsequent statutory enactment cannot act to defeat retroactively such a cause of action. Citing *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 815-16 (Me. 1980).

Citing *Heber* again: "... [t]here can be no question that the repeal of the [statute] had the effect of entirely eliminating a cause of action that existed at the time [plaintiffs] suffered the damages [they] now allege[], thus affecting [plaintiffs'] vested rights in that cause of action." *Id.*, ¶ 12, 755 A.2d at 1067. Considering the statements of material fact, plaintiffs suffered damages prior to the effective date of the amendment. *See id.* Because the cause of action accrued prior to a change in the law, it is governed by the then applicable law and cannot be applied to extinguish plaintiffs' claim. This conclusion is founded upon established common law. *See Choroszy v. Tso*, 647 A.2d 803, 807 (Me. 1994) (a cause of action accrues at the time of the judicially recognized injury). *See Batchelder v. Tweedie*, 294 A.2d 443, 444 (Me. 1972) (substantive rights of the parties are fixed at the date upon which the cause of action accrued).

This recitation of the common law is supported by language in *Spiller, et al. v. State of Maine, et al.*, 627 A.2d 513 (Me. 1993). In this case, the plaintiffs complained of

modification to prospective retirement benefits for state employees made by the Legislature for budgetary reasons. As argued by the defendants in this case, "[u]nder time honored rules of construction, a statute will not be presumed to create a contractual right, binding future legislatures, unless the intent to do so is clearly stated." *Id.* at 515, (citing *National R.R. Passenger Corp. v. Acheson, Topeka & Sante Fe Railway Co.,* 470 U.S. 451, 465-466 (1985)).

> Absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."
>
> This well-established presumption is grounded in the elementary proposition that the principal function of the Legislature is not to make contracts, but to make laws that establish the policy of the State. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be limit drastically the essential powers of the legislative body.

*National R.R. Passenger Corp.,* 470 U.S. at 465-466 (quoting *Dodge v. Board of Education,* 302 U.S. 74, 79 (Me. 1937)).

The court found the legislative intent not to create contractual rights but rather to state generally principles by noting a provision in the retirement law that stated that only the retirement benefits that "'would be due to a ... on the date immediately preceding the effective date of the amendment' cannot be reduced by an amendment to the retirement statute." *Spiller,* 627 A.2d at 516. The court found this to be, by implication, intent by the Legislature to reserve to future legislators the power to modify prospective retirement benefits for employees to whom benefits are not then due. The court noted that, "None of the benefits at issue here were due to any plaintiff on the effective date of this legislation." *Id.* That conclusion, as clearly recited by *Heber,* 755 A.2d 1066, makes a clear distinction from the legislative intent clearly stated in 3

M.R.S.A. § 2 that the members of the Legislature are "entitled to" compensation as provided by that law.

The entry will be:

Plaintiffs' motion for summary judgment on count I of their complaint is GRANTED; judgment for plaintiffs on count I of their complaint; defendants' motion for summary judgment on count I of plaintiffs' complaint is DENIED; plaintiffs' motion for summary judgment on count II of plaintiffs' complaint is GRANTED; judgment for plaintiffs on count II of plaintiffs' complaint; defendants' motion for summary judgment on count II of plaintiffs' complaint is DENIED; plaintiffs' motion for summary judgment on count III of their complaint is DENIED; defendants' motion for summary judgment on count III of plaintiffs' complaint is GRANTED; judgment for defendants on count III of plaintiffs' complaint.

Dated: March _16_, 2005

Donald H. Marden
Justice, Superior Court

Attorney for: BETHEDA EDMONDS
MELISSA REYNOLDS O'DEA  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


JOHN RICHARDSON  - DEFENDANT


Attorney for: JOHN RICHARDSON
MELISSA REYNOLDS O'DEA  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


DAVID E BOULTER  - DEFENDANT


Attorney for: DAVID E BOULTER
MELISSA REYNOLDS O'DEA  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


Filing Document: COMPLAINT          Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 05/12/2004

## Docket Events:

05/12/2004 FILING DOCUMENT - COMPLAINT FILED ON 05/12/2004

05/12/2004 Party(s):  W TOM SAWYER JR
           ATTORNEY - RETAINED ENTERED ON 05/12/2004
           Plaintiff's Attorney: DANIEL I BILLINGS

           Party(s):  GEORGE H BUUNKER JR
           ATTORNEY - RETAINED ENTERED ON 05/12/2004

           Party(s):  ROBERT A DAIGLE
           ATTORNEY - RETAINED ENTERED ON 05/12/2004
           Plaintiff's Attorney: DANIEL I BILLINGS

05/12/2004 Party(s):  ALBION D GOODWIN
           ATTORNEY - RETAINED ENTERED ON 05/12/2004
           Plaintiff's Attorney: DANIEL I BILLINGS

           Party(s):  GARY E SUKEFORTH
           ATTORNEY - RETAINED ENTERED ON 05/12/2004
           Plaintiff's Attorney: DANIEL I BILLINGS

05/12/2004 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 05/12/2004
           MAILED TO ATTY BILLINGS.

W TOM SAWYER JR - PLAINTIFF
544 VALLEY AVE
BANGOR ME 04401
Attorney for: W TOM SAWYER JR
DANIEL I BILLINGS  - RETAINED 05/12/2004
MARDEN DUBORD ET AL
PO BOX 708
44 ELM STREET
WATERVILLE ME 04901-0708


ROBERT A DAIGLE  - PLAINTIFF


Attorney for: ROBERT A DAIGLE
DANIEL I BILLINGS  - RETAINED 05/12/2004
MARDEN DUBORD ET AL
PO BOX 708
44 ELM STREET
WATERVILLE ME 04901-0708


ALBION D GOODWIN  - PLAINTIFF


Attorney for: ALBION D GOODWIN
DANIEL I BILLINGS  - RETAINED 05/12/2004
MARDEN DUBORD ET AL
PO BOX 708
44 ELM STREET
WATERVILLE ME 04901-0708


GARY E SUKEFORTH  - PLAINTIFF


Attorney for: GARY E SUKEFORTH
DANIEL I BILLINGS  - RETAINED 05/12/2004
MARDEN DUBORD ET AL
PO BOX 708
44 ELM STREET
WATERVILLE ME 04901-0708



vs
THE LEGISLATIVE COUNCIL - DEFENDANT

Attorney for: THE LEGISLATIVE COUNCIL
MELISSA REYNOLDS O'DEA  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


BETHEDA EDMONDS  - DEFENDANT

**DOCKET RECORD**